(R.D. 11670)

SOMMERS FABRICS CORP. v. UNITED STATES

Entry Nos. 716427; 911821.

(Decided June 5, 1969)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Owen J. Rader*, trial attorneys), for the defendant.

WATSON, Judge: The merchandise involved in these consolidated appeals for reappraisement, consists of vinyl plastic sheeting manufactured in West Germany and exported between January and June of 1962. It was appraised on the basis of United States value of such merchandise (section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165). Plaintiff claims that the merchandise should be appraised under section 402a(f) of said act, on the basis of cost of production.

It was stipulated between the parties that there was no one price at which *similar* merchandise imported from West Germany was freely offered for sale for domestic consumption, packed ready for delivery in the principal markets of the United States, at or about the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade (R. 5–6). It was further stipulated between the parties that the principal market for such merchandise was the metropolitan New York area (R. 6).

The specific issue, in this case, is whether there is a United States value for the involved merchandise as contended by the defendant, or whether it is necessary to resort to cost of production to determine the proper value of the merchandise.

It is the position of the plaintiff, that United States value (section 402a(e)), has been eliminated from consideration since there was no one price at which the involved merchandise was freely offered for sale for domestic consumption in the principal markets of this coun-

try. It is further contended that plaintiff's exhibit 1, an affidavit of the manufacturer, establishes the proper cost of production of the merchandise.

The statutes herein involved, are as follows:

Section 402a (e), *supra:*

UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Section 402a (f), *supra:*

COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The pertinent record consists of the testimony of one witness called by the plaintiff, and an affidavit of the manufacturer of the involved merchandise (plaintiff's exhibit 1). Swatches, typical of the materials purchased by plaintiff from the manufacturer herein, were introduced in evidence as plaintiff's exhibit 2 (R.8). The defendant introduced in evidence a report of Customs Agent A. John Kessel, dated March 13, 1963 (defendant's exhibit A).

Plaintiff's exhibit 1 is an affidavit of Dieter Lissman, a principal in the firm of Alkor GmbH, manufacturer of the imported merchandise. Mr. Lissman stated that he is in charge of and "intimately acquainted" with the items manufactured by his firm and supervises and has access to the sales record, records of cost and manufacture and production, as well as records pertaining to general expenses and all other expenses embraced in the manufacture and sale of the products of his firm. The affiant further stated that based upon these records the following were the cost of production figures for the period between January 1962 and June 1962, in deutsche marks the currency of the country of production (plaintiff's exhibit 1, paragraph 8) :

| Type | Gauge | Color | Cost of Materials | Labor & Mfg. Expense | General Expense | Profit | Packing | Total in Marks |
|------|-------|-------|------|------|---------|--------|---------|-------|
| 37044 | 10 | 51P | 0, 59 | 0, 29 | 0, 30 | 0, 11 | 0, 05 | 1, 34 |
| " | " | 999 | 0, 53 | 0, 29 | 0, 29 | 0, 10 | 0, 05 | 1, 26 |
| " | " | 905 | 0, 59 | 0, 29 | 0, 30 | 0, 23 | 0, 05 | 1, 46 |
| " | " | 54U | 0, 59 | 0, 29 | 0, 30 | 0, 23 | 0, 05 | 1, 46 |
| " | " | 23R | 0, 59 | 0, 29 | 0, 30 | 0, 23 | 0, 05 | 1, 46 |
| " | " | 26F | 0, 59 | 0, 29 | 0, 30 | 0, 29 | 0, 05 | 1, 52 |
| " | " | 11C | 0, 59 | 0, 29 | 0, 30 | 0, 23 | 0, 05 | 1, 46 |
| " | " | 801 | 0, 59 | 0, 29 | 0, 30 | 0, 23 | 0, 05 | 1, 46 |
| 38044 | 16 | 991 | 0, 85 | 0, 38 | 0, 43 | 0, 02 | 0, 07 | 1, 75 |
| 38084 | 18 | 999 | 0, 95 | 0, 41 | 0, 48 | 0, 13 | 0, 08 | 2, 05 |
| " | " | 905 | 1, 07 | 0, 41 | 0, 48 | 0, 17 | 0, 08 | 2, 21 |
| " | " | 11C | 1, 07 | 0, 50 | 0, 48 | 0, 24 | 0, 08 | 2, 37 |
| " | " | 26F | 1, 07 | 0, 50 | 0, 48 | 0, 32 | 0, 08 | 2, 45 |
| " | " | 82W | 1, 07 | 0, 50 | 0, 48 | 0, 24 | 0, 08 | 2, 37 |
| " | " | 905 | 1, 07 | 0, 50 | 0, 48 | 0, 24 | 0, 08 | 2, 37 |
| 38084 | 20 | 991 | 1, 05 | 0, 43 | 0, 53 | 0, 35 | 0, 09 | 2, 45 |
| 38094 | 12 | 999 | 0, 62 | 0, 31 | 0, 33 | 0, 06 | 0, 06 | 1, 26 |
| 38094 | 14 | 999 | 0, 73 | 0, 33 | 0, 38 | 0, 01 | 0, 06 | 1, 51 |

The affiant further indicated that included in this computation of general expenses, were c.i.f. costs of 0.09DM to 0.18DM depending upon the gauge. He further stated that the profit factor varied in accordance with the quantity of color and gauge manufactured, stating in this connection that, "if we produce a large quantity of a certain color, then our profit would be greater than if we produced such item in small quantities."

Mr. Lissman further testified:

9. With reference to the element of profit noted in the preceding figures, while I do not have access to the books and records of other manufacturers in West Germany who are engaged in the production of vinyl plastic sheeting of the same general character or the same class or kind as the plastic sheeting which ALKOR GMBH has manufactured and exported to Sommers Fabrics Corporation of the United States and which are the subject of the proceedings in which this affidavit is being offered, from my general knowledge of the cost of materials, labor, overhead, packing, general expenses and all other costs

and expenses ordinarily incurred in producing plastic sheeting in West Germany, and from my knowledge of the selling price and business practices of other manufacturers and purchasers, it is my firm opinion that other manufacturers' profit during the period from January, 1962 to June, 1962 was equal to the profit added by ALKOR GMBH, as noted in the preceding figures, in the manufacture and sale of the involved plastic sheeting.

The affidavit of Mr. Lissman further indicates that efforts were made by him to obtain the element of "profit" used by the other manufacturers in West Germany of the same class or kinds of goods. The affiant stated that he communicated with the firms of Schildkrät AG, Kornrad Hornschuch AG, I. H. Benecke GmbH and Renolit Werke GmbH. It appears that only Renolit would disclose its profit which varied between 4 to 7 percent, depending upon the thickness of the plastic; and that the other firms would not give the required information.

Defendant's exhibit A consists of a report of Customs Agent A. John Kessel, dated March 13, 1963 indicating that on March 4, 1963 said agent interviewed Mr. Saul Altman, treasurer of Sommers Fabrics Corp., and Mr. Jack Schecter, secretary of that firm, at the office of the company in East Rutherford, New Jersey. According to the report, Mr. Altman stated that the relationship existing between his firm and the manufacturer is that of buyer and seller; that the importer has the sole import rights for the subject merchandise in the United States; that the merchandise under appraisement is imitation patent leather made from polyvinyl chloride, imported in rolls in varying lengths depending upon the thickness of the material. It further appears that the merchandise is sold in the metropolitan New York area, at a net unit price (per yard), f.o.b. buyers place of business; and that there are no published price lists. However, the office price list, in effect during October 1961 to August 1962, is set forth at page 3 of said report. The report (defendant's exhibit A), page 4, further indicates as follows:

It was stated that by far the most sales were made at the prices listed under the column headed "List". It was further stated that the bulk of the sales made by the firm were of the black patent.

Representative invoices covering sales made during the month December 1961, and until January 3, 1962 were checked. The prices charged were those listed.

RESTRICTIONS ON RESALE OR USE

It was stated that the firm places no restrictions of any kind on the buyers of the merchandise.

Although the firm gives a quantity price, it was stated that the greater number of sales were made at the prices shown under the column headed "List" as reported under section captioned *Prices - Terms*, above.

Plaintiff's witness, Mr. Herman Schecter, is president of Sommers Fabrics Corp., East Rutherford, New Jersey, a firm engaged in importing and distributing plastic materials from Germany. He stated that his duties include the management of the entire operation, including sales policy, purchasing, distribution, etc. (R. 7), and that he was familiar with the sales policy of his company on merchandise such as found in plaintiff's exhibit 2.

Mr. Schecter testified that his company had an internal price list for purposes of selling materials such as here imported. He stated that this price list was not circulated to the trade but was strictly for internal use among his sales people (R. 10). Mr. Schecter further stated that during the period between January and July of 1962, his company's prices were not based upon the price list (R. 11-12). The witness described the sales policy of his company as follows:

> * * * The normal factor of the competitive aspect of the business, the supply and demand. If we were overloaded at one point of the season with a certain thickness or color, we could conceivably put a drive on to sell it at a lower price than we might have offered it a week or a month before, but primarily, the major basis was the competitive aspect. We tried not to lose any sales, and if a customer was able to purchase a product similar to ours, and our salesman was unable to get the price that he asked for, and was certain that the customer could buy it elsewhere at a lower price, then he would come back to see if it would be all right to meet the price and unfortunately this was a situation that existed almost from the time we got our first competitor in this product.

Plaintiff's witness could produce no contracts of sale between his firm and any customers for the period of January through July 1962 (R.15). In explanation, he stated that after an audit of his firm's books by the Internal Revenue Service, records for this period were destroyed (R. 15, R. 22).

Defendant's exhibit "A", as indicated, refers to an interview by Customs Agent A. John Kessel had on March 4, 1964 with the treasurer of the plaintiff firm relative to the involved importation. It further appears that supplemental information was supplied by the secretary of the importer as to the circumstances surrounding sales of merchandise during the period here under consideration. Defendant's exhibit A further states that "while the importer has no published price lists, * * * there is transcribed below the office price list which was in effect during the period in question", as follows:

Black Roller Patent
October 1961 to August 1962

| Gauge | List | Volume 50 Rolls Up | Direct Pier Delivery 50 Rolls and Up |
|---|---|---|---|
| .006 | $0.38 | $0.35 | |
| .008 | 0.44 | 0.41 | $0.39 |
| .010 | 0.47 | 0.45 | 0.43 |
| .012 | 0.49 | 0.46½ | 0.45 |
| .014 | 0.52 | 0.50½ | 0.49 |
| .016 | 0.60 | 0.58 | 0.56 |
| .018 | 0.70 | 0.68½ | 0.67 |
| .020 | 0.80 | 0.78 | 0.75 |
| .024 | 1.03 | 1.00 | 0.97 |
| .030 | 1.25 | 1.22 | 1.19 |
| .035 | 1.60 | 1.55 | 1.53 |
| .040 | 1.88 | 1.85 | 1.80 |

Colored Patent
(other than red)

| Gauge | Price Per Yard |
|---|---|
| .010 | $0.60 |
| .014 | 0.70 |
| .016 | 0.14 |
| .018 | 0.90 |

Red Patent

| | |
|---|---|
| .010 | $0.60 |
| .014 | 0.73½ |

By statutory provision, the value found by the appraiser, is presumed to be correct, and the burden rests upon the party challenging such appraisement to prove otherwise (Title 28, U.S.C., section 2633). In order to sustain its burden of proof, plaintiff must not only overcome the statutory presumption by proving the appraisement to be erroneous, but must also establish some other dutiable value to be correct. To do this, plaintiff must meet every material issue involved in the case, and failure to do so results in the appraisement remaining in full force and effect. *Brooks Paper Company* v. *United States*, 40 CCPA 38, 41, C.A.D. 495 (1952).

As heretofore indicated, plaintiff in support of its claimed value for the involved merchandise, contends in the first instance that, for the purpose of appraisement, there must be one price at which all persons may be able to purchase the merchandise. While I am in agreement with this proposition, I fail to find, for reasons stated, *infra*, that under the circumstances in this case there was any violation of

this principle so as to negative the appraised values here found for the merchandise.

Plaintiff further contends that a price arrived at by "bargaining" is not one which may substantiate a United States value, and, in this connection, maintains that the prices received for the merchandise in question depended upon the bargaining ability of the purchaser. However, in my opinion, there is no competent evidence in this record to establish that bargaining was the "initial" basis for offering this merchandise for sale in the markets of the United States. While in certain cases there may have been sales of merchandise such as here in question, at prices below those at which the merchandise was initially offered for sale, such sales, in my opinion, are not controlling for appraisement purposes where, as appears in this case, there were initial prices at which the merchandise was freely offered to all purchasers.

According to the testimony of plaintiff's witness, the sales policy of the plaintiff firm was "to obtain as many sales as we possibly could" in whatever markets the company could sell at competitive prices and it appears that the plaintiff had an internal price list that was used as a "guideline" for the purpose of selling its merchandise (R. 10). While it may have been the practice of the company to lower its prices on overstocked merchandise to meet competition on certain occasions, such business practice does not, in my opinion, establish that the plaintiffs' initial offering prices to each customer were arrived at by bargaining, or that the initial offering price to each prospective purchaser was anything other than uniform. The so-called bargaining practice would not remove from consideration the initially offered price if it otherwise met the statutory requirements. In *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, 125, C.A.D. 846 (1964), the court, in passing upon the proper value of merchandise sold at a variety of prices, stated:

> The situation here, as we see it, comes to this. Union Carbide, while it had established prices at which it sold a major part of its product, also made some sales at various slightly lower prices, so that it cannot be said that it had any *one* selling price as reflected in its actual *sales*. It did, however, have a single list price at which the product was *offered* to all purchasers at wholesale and at which any such purchaser could buy. It was this offering price—a price at which most sales actually were made—which the Appellate Term found to be within the terms of the statute after finding that the actual sales should be disregarded.

> We agree that the prices shown by the actual sales should be disregarded for the reason that the only sales prices that can be considered are those at which the article is "*freely* sold [402(e)]." (Our emphasis.) That term, as defined in 402(f), means, first, "sold * * * to all purchasers at wholesale * * *." [(f)(1)(A)] Clearly, Union Carbide did not *sell* to *all* purchasers at wholesale at the prices below 80¢ and so the article was not "freely sold" at

those prices. For that reason they are to be disregarded. [Emphasis quoted.]

So, too, in this case there was a price at which the merchandise was "freely" offered to all purchasers, that is, the list prices on the internal office list. There is no competent proof in this case that the merchandise was not *verbally* offered for sale, at uniform prices, to all purchasers in the first instance, with any subsequent bargaining merely reducing the actual offered sales prices in particular instances. In *Harry Garbey* v. *United States*, 24 CCPA 48, T.D. 48332 (1936), in sustaining the appraised valuation of certain "cut but unset" diamonds, the court, page 52, stated:

> Appellant points out that the testimony of record supports the contention as to there not being what may be called a definite offering price for unique diamonds which may be taken as a freely offered price to all purchasers, because, it is said, transactions in such merchandise are the result of bargaining, the seller frequently asking more than he is willing to take and more than he expects to obtain. This may be true, but we cannot agree that it follows, as a matter of law, that the price actually obtained must be taken as the dutiable value in all instances. That assuredly cannot be held to meet the statutory requirements.

In *Daystrom, Inc., et al.* v. *United States*, 54 CCPA 111, C.A.D. 920 (1967), the court in upholding the appraised valuation of certain radio tubes imported from Japan, upheld the finding of the Appellate Term of this court that the imported tubes had correctly been appraised at foreign value, and in its decision, page 115, stated:

> As the Appellate Division recognized, dealers in the Japanese home markets who made the representations reported in collective exhibits A, C, and H subsequently provided affidavits tending to repudiate those representations. However, the Division found that the affidavits, made approximately two years after the interviews of affiants by Treasury agents, to comprise conclusional statements and not include evidentiary facts as to prices to offset the price lists and assertions made to the Treasury agents. It held that such conclusions are not sufficient to overcome the presumption that the appraiser's valuation on the basis of foregoing value is correct. See *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705.

In my opinion, the presumption of correctness attaching to the appraisement in this case, has not been overcome by any competent evidence adduced on the part of the plaintiff. Furthermore, defendant's exhibit A indicates that the freely offered price for the involved merchandise was the "list" price indicated on the internal office price list and this conclusion has, in no way, been refuted by the plaintiff. While it may be that the price lists were not circulated to the trade, it appears that these price lists were utilized by the plaintiff to freely offer the merchandise to all purchasers.

The testimony of plaintiff's witness that during the period in question, his company's prices were not based upon the price list, is insufficient to overcome the appraised values. The witness could not remember nor refer to specific sales, customers, or dates of any purchasers during the period January 1962 to July 1962. It might well be that there were no special considerations given to certain customers during this period. The absence of plaintiff's business records, or other correspondence, as well as any sales records of purchasers from Sommers, which in my opinion, are not adequately explained, is a strong factor in concluding that the plaintiff has failed in its burden of proof of overcoming the presumption of correctness attaching to the appraisement of the involved merchandise.

Accordingly, for the reasons stated above, I am of the opinion that the record in this case is insufficient to make out a *prima facie* case establishing that the appraised values are erroneous. Further, in view of the conclusion here reached, I deem it unnecessary to decide whether cost of production (section 402a(f) of the Tariff Act of 1930, as amended) is the proper basis of appraisement, or whether the proof offered by the plaintiff in support of the claimed values is competent or correct. On the record here presented, the appraised values must be sustained.

The court finds facts, as follows:

1. The merchandise involved consists of imitation patent leather made from polyvinyl chloride imported by Sommers Fabrics Corp., into the United States between January 1962 and July 1962.

2. The merchandise appears on the Final List (T.D. 54521) published by the Secretary of the Treasury.

3. That said merchandise was appraised on the basis of United States value under the provisions of section 402a(e) of the Tariff Act of 1930, as amended.

4. That there was no one price at which similar merchandise imported from West Germany was freely offered for sale for domestic consumption packed ready for delivery in the principal markets of the United States, at or about the time for exportation of said merchandise, in the usual wholesale quantities and in the ordinary course of trade.

5. That the record in this case fails to establish that the involved merchandise was sold or offered for sale based upon the bargaining ability of the purchaser.

6. That the plaintiff has not offered any competent evidence to establish that the appraised values were erroneous.

The court concludes, as a matter of law, as follows:

1. That the presumption of correctness of the appraiser's finding of value has not been overcome.

2. That United States value, as that value is defined in section 402a(e) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the involved merchandise.

3. That such values are represented by the appraised value.

Judgment will be entered accordingly.